Hon. HOMER E. ROYCE, ⎫
Hon. JONATHAN ROSS, ⎬ Assistant Judges.
Hon. RUSSELL S. TAFT, ⎭

---

## JONATHAN C. SMITH v. TOWN OF ROYALTON.

*Town Clerk. Index. Evidence.*

1. The court charged the jury as to the duty of the town clerk in indexing the records of deeds that he must provide a *suitable index,* "of such a kind *as a man of ordinary intelligence, of fair business capacity, would require to make a search.* It is not necessary that the index, or alphabet, should be one that *all men* could take and *at once find* a record. The law does not go to that extent. All that is required, is, that it shall be such an index . . . . as would enable a man *understanding the plan on which the index was made up,* and having ordinary, fair business capacity, to take it, and thereby find the record he was in search of." *Held,* no error.
2. Evidence is not admissible to contradict a witness for the purpose of *impeachment on immaterial matter;* thus, in an action against a town for the default of the town clerk, the town clerk had testified that the plaintiff did not examine the records at his office at a certain time. *Held,* immaterial, and that, therefore, the plaintiff, in rebuttal, could not contradict it.

CASE tried at the June Term, 1880, POWERS, J., presiding. Trial by jury ; verdict for the defendant.

Action for recovery of damages alleged to have been sustained by reason of the default of Calvin Skinner, town clerk of Royalton, in not properly indexing a certain mortgage from Zeb B. French to Esther E. French, on a certain farm in Royalton that plaintiff bought. Plea, the general issue.

The suit was originally brought against the town and said Skinner ; but Skinner's death was suggested at the December Term, 1878, and the suit was thereafter prosecuted against the town alone.

Plaintiff introduced evidence tending to show that on November 15, 1867, he bought a farm in Royalton of Jason S. Lovejoy and his wife, at and for the price of $3900, and took a deed thereof the same day ; that at the time of his purchase, his grantors informed him of the existence of two mortgages on the farm, and that he assumed them and agreed to pay them as a part of the purchase-money ; that on that day, and before he took his deed, he went to the town clerk's office in Royalton, and examined the land records in said office, for the purpose of ascertaining whether or not said farm was otherwise free from incumbrances ; that he then and there made diligent search in that behalf, assisted by said Skinner, the town clerk, but failed to find any other incumbrances thereon ; that thereupon, relying upon said records, and not otherwise, he proceeded to complete, and on that day did complete, his purchase of said farm, and took a deed thereof, believing said farm to be free from all incumbrances except said two mortgages that he had assumed and agreed to pay as aforesaid ; that he thereupon moved on to said farm, and continued to occupy it, and that in February, 1874, when Zeb French died, he learned for the first time that there was a mortgage on said farm from the said French to Esther E. French, for $900, dated October 29, 1863, and recorded by said Skinner, town clerk as aforesaid, the same day, a part of which, to wit, the sum of $706.34, he was afterwards, on April 24, 1875, compelled to pay.

Said last-mentioned mortgage was recorded at length in book " P " of the land records of Royalton. There was an index of

reference contained in and annexed to said book, made on the plan of entering in one column, in alphabetical order, the name of the grantor *to* the grantee, and in a parallel column the name of the grantee *from* the grantor, of the instrument recorded, with the page of the record. The left-hand column—grantor *to* grantee—under the title " F," in said index, was filled to, and including the bottom line of the column ; and there was nothing at the bottom of that column, nor elsewhere in it, to indicate that that part of the index was continued in any other place in the index or book. The right-hand column on the same page— " grantee *from* grantor "—was from half to two thirds filled, and in the blank space therein about midway between the writing and the bottom of the column, were written the words, " look under letter O." Under the letter " O " of the index, the index of the " F's " was continued, and there, in the left-hand column, the said Esther E. French mortgage was indexed, and the page of the book given whereon it was recorded ; but it was not indexed in the right-hand column under the letter " O," nor was it indexed in either column under the letter " F," in the index.

Plaintiff testified that on the day of his said purchase, and before he went to the town clerk's office as aforesaid, Lovejoy gave him a minute of the two mortgages that he assumed as aforesaid, and that the record of them was found on the occasion of his said search. One of said last-mentioned mortgages was from the said Zeb B. French to Wealthy D. Skinner, and it was indexed with the " F's " under the letter " O "; and in the same column, three or four lines below, the said Esther French mortgage was indexed. Plaintiff also testified, that on the occasion of his said search, his attention was not attracted to the said words, " look under letter O ;" that he did not then see those words, and did not look under the letter " O ;" but testified that he did find the index of the Wealthy D. Skinner mortgage.

Plaintiff claimed, and gave evidence tending to show, that the index in said book, as far as it related to the " F's " and the Esther French mortgage, was unsuitable, and that by reason thereof he failed to find the record of said last-mentioned mortgage when he searched the records as aforesaid ; and as to

whether or not said index was suitable in this behalf, became and was a material question.

On this part of the case the court charged the jury as follows :

The manner of making up the index is one that commends itself to your good judgment. The law says that it shall be a suitable index ; and it is for you to say whether, in this particular case, this index, so far as it concerns this Zeb B. French mortgage, was a suitable index ; and in determining that question, you are to have in view the object and purpose of the index itself. What is it designed for ? It is designed as an additional means or facility, to enable persons interested in making search of the records, to find the object of that search.

In the first place, it is the duty of the town clerk to spread these deeds upon the records. Now when persons go to examine those records in order to trace out a title, the law says there shall be an additional facility provided, to aid them in their search—to enable them to make an easier and more accurate search—and that that shall be, a suitable index—that is to say, a book of reference to those records, of such a kind as a man of ordinary intelligence, of fair business capacity, would require, to make a search. It is not necessary that the index or alphabet, should be one that all men could take and at once find a record. The law does not go to that extent. All that is required, is, that it shall be such an index—such an alphabet—as would enable a man understanding the plan on which the index was made up, and having ordinary, fair business capacity, to take it and thereby find the record he was in search of. It would not do to say that the index was defective because a man began to examine it who had no idea of the plan on which it was made up, and could not find a record. Before the index could do anybody any good, they must understand how to use it—they must understand the manner in which it is made ; and if a man goes to the town clerk's office, and does not understand it, it is his business to find out, before he commences his search ; because the law has provided this index for the use of men who understood how to use it. They must have business capacity enough to know how to use the index ; that is to say, they must know that it contains the list of the names set down in a particular order. Then, when you come to the question of leaving one page and going to another, to trace the same list of names further, it is a question for you to say whether, leaving it in the manner in which it was left in this case, was a suitable way to leave it or not.

To that part of the charge above given, the plaintiff excepts. The other questions appear in the opinion of the court.

*J. W. Rowell*, for the plaintiff.

*D. C. Denison & Son*, for the defendant.

The opinion of the court was delivered by

Ross, J. I. The plaintiff contends that the County Court was in error, in that portion of the charge which required the plaintiff to understand the plan upon which the index was made, and how to use it. The statute does not prescribe the manner in which the index is to be made, but simply that it shall be a suitable index. Hence any plan may be adopted in making the index, provided only, it be such that the index shall suitably answer the requirements of such an index; that is, inform the person examining the title of a particular tract of land, where the record of such title can be found. It is apparent that such an index might be made upon the plan of giving, in alphabetical order, the names of the grantors and grantees in each conveyance, as was done in this case; or by carrying forward continually, from the original proprietor all the conveyances of each right, or lot of land, and all the sub-divisions thereof. Other plans for indexing the records might possibly be used and still answer the requirements of the statute. To properly use any index the user must understand the plan on which it is constructed, and how to trace the title by such use. We think there was no error in this portion of the charge, especially in connection with the other portions in which the purpose to be served by an index was properly explained, and the suitableness of the index in question, properly submitted to the jury. We think on the inspection of the index, showing the grantor and grantee to each recorded conveyance in two ways, and the page where the record could be found, and on the admission of the plaintiff that he found the index to the mortgage from Zeb B. French to Wealthy D. Skinner under the letter " O," and that an index of the mortgage complained of, was there to be found in proper place but two or three lines lower in the column, the County Court might have held as a matter of law that the index was *suitable* so far as regards the plaintiff, as he was not misled, but was made aware that a portion of the conveyances

Smith *v.* Royalton.

from grantors whose names commenced with F were to be found under the letter " O," and so was bound to examine the conveyances there indexed, in which the grantor's name commenced with F.

II. The plaintiff also contends that the court erroneously excluded the testimony of Eugene Smith. His testimony was offered and claimed to be admissible on two grounds; first, to show that the plaintiff's search of the records extended back as far as the mortgage complained of; and secondly, to impeach the testimony of the deceased town clerk. What was proposed to be shown by the witness was that the deceased town clerk said at the time of, and while making the search, that the plaintiff need not search back further than when his brother parted with the title to the premises, for his brother was a careful man and would know that his title was all right. It is admitted that this declaration of the town clerk, if made, would not bind the town. It was, therefore, immaterial and inadmissible for that purpose. Nor do we think that it legitimately tended to show that the plaintiff's search and examination of the title extended back as far as the Zeb B. French mortgage. It would have a tendency to show that the plaintiff did not search back of the time when the town clerk's brother parted with the title, but not that he did actually trace the title back as far as that time. Hence, it was inadmissible for that purpose and immaterial. It is well settled that a party cannot contradict a witness for the purpose of impeachment on immaterial matter. Besides, the whole question of the extent of the plaintiff's examination of the records becomes immaterial on the finding by the jury that the index was a suitable one.

The judgment of the County Court is affirmed.